| | |
|---|---|
| **AGNES XIE,** | 1:17-cv-00284-LJO-SKO |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER ON DEFENDANTS BENCHMARK INSTRUMENTATION AND ANALYTICAL SERVICES, INC.; TOOD MARTENS; STEVEN McDOUGALL; GRANT SHANNON; AND TURNER DESIGNS HYDRO CARBON INSTRUMENTS, INC.'S MOTION TO DISMISS** |
| v. | |
| **TURNER DESIGNS HYDRO CARBON INSTRUMENTS, INC., et al.,** | |
| Defendants. | |
| | **(Doc. 19.)** |
| | **MEMORANDUM DECISION AND ORDER ON DEFENDANTS BARTMAN AND FLETCHER'S MOTION TO DISMISS** |
| | **(Doc. 20)** |
| | **MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT** |
| | **(Doc. 49)** |

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

## I. <u>INTRODUCTION</u>

In February 2017, Plaintiff Agnes Xie ("Plaintiff") filed this action in pro se, and filed an amended complaint in June 2017. (Doc. 16.) Plaintiff alleges she was married to Defendant Mark Fletcher ("Fletcher") from September 2007 until February 2017, when a divorce degree was entered by a California family court. Plaintiff contends that during their marriage, Fletcher sold shares in his business without Plaintiff's notice or consent and for inadequate consideration. Plaintiff seeks to set

1

aside the sale of shares and invalidate the transfer. Defendants Mark Fletcher and Gary Bartman filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) asserting the Court is divested of diversity jurisdiction under the domestic relations exception; alternatively, they argue Plaintiff has failed to sufficiently state a cognizable claim against them and did not properly serve the complaint under Federal Rule of Civil Procedure 4. Defendants Turner Designs Hydro Carbon Instruments, Inc. ("TDHI"), Benchmark Instrumentation and Analytical Services, Inc. ("Benchmark"), Grant Shannon, Todd Martens, and Steven McDougall filed a motion to dismiss asserting Plaintiff fails to state a cognizable claim against them; alternatively, they seek dismissal of the complaint for a more definite statement under Rule 12(e).

For the reasons set forth below, Defendants Bartman and Fletcher's 12(b)(1) motion is GRANTED; Defendants TDHI, Benchmark, Shannon, Martens, and McDougall's 12(b)(6) motion to dismiss is DENIED as MOOT; Plaintiff's motion to amend is DENIED as MOOT.

## II. FACTUAL BACKGROUND

**A.  Operative First Amended Complaint ("FAC")**

Plaintiff filed a form complaint in February 2017 naming Fletcher, TDHI, Benchmark, Greg Bartman, Grant Shannon, Todd Martens, and Steven McDougall. (Doc. 1.) She seeks to set-aside the 2014 sale of Fletcher's TDHI stock, which she alleges is community property that was sold without her notice or permission. Summonses were issued and served; on June 5, 2017, TDHI filed a motion to dismiss. While this motion was pending, Plaintiff filed a First Amended Complaint ("FAC").

As detailed in the FAC, Plaintiff lives in Virginia and she has filed suit against her ex-husband, California resident Mark Fletcher ("Fletcher"), for, among other things, breach of spousal fiduciary duty. Fletcher filed a divorce petition in Fresno County Superior Court in 2015, which resulted in a bifurcated divorce decree as to Plaintiff and Fletcher's marital status only in February 2017. No other

issues were adjudicated because the state court found it had no personal jurisdiction over Plaintiff.[1]

Three weeks after the state court issued its bifurcated divorce decree, Plaintiff filed suit in this Court seeking a determination that Fletcher wrongfully sold a community property ownership interest in TDHI in 2014 without her consent or notice, despite that Plaintiff alleges Fletcher's interest in TDHI was acquired prior to their marriage.[2] The FAC names Fletcher, his business partner Bartman, their company TDHI, as well as Benchmark, the company that apparently purchased TDHI in 2014, and Benchmark's corporate officers Grant Shannon, Todd Martens, and Steven McDougall.

The FAC alleges that, just prior to their wedding in 2007, Fletcher (at Bartman's request) asked Plaintiff to sign a spousal consent of TDHI's "Buy and Sell Agreement." (Doc. 16, ¶ 7.) Although Plaintiff sought counsel, she was unable to retain an attorney to review the agreement. Plaintiff did not sign the buy and sell agreement, and informed Fletcher and Bartman of her unwillingness to sign. (Doc. 16, ¶ 7.)

On April 28, 2014, Plaintiff received a mailed request for spousal consent of a merger deal from TDHI's counsel that required signature within two days. (Doc. 16, ¶ 13.) Plaintiff determined there were several financial documents missing from the consent request, but when she asked to review the missing documents, she received no response. (Doc. 16, ¶¶ 15, 20.) Plaintiff later discovered that a merger of TDHI with Benchmark had occurred on April 30, 2014, even though she had not signed the spousal consent request. After the merger, Fletcher became a 10 percent shareholder of the resulting company.

Plaintiff alleges that throughout their marriage, Fletcher and Bartman continually denied her requests for information about TDHI's financial status and records. (Doc. 16, ¶¶ 27-28.) Fletcher and

---

[1] According to Plaintiff, no property agreement or spousal support agreement was reached during the divorce proceedings. (Doc. 16, ¶ 33.) On December 22, 2016, the California state court determined it had no personal jurisdiction over Plaintiff in California. According to Plaintiff, the California court issued a divorce judgment on February 16, 2017, but granted Fletcher's request to reserve the issues of spousal support and property division for a future adjudication. (Doc. 16, ¶ 33.)

[2] Plaintiff alleges Fletcher formed a business with Gary Bartman in 2002, each owning a 50 percent share of the company. Plaintiff alleges she married Fletcher in 2007.

3

Bartman also deliberately "took a low salary and [did] not take home the dividends, profit sharing, and net profit." (Doc. 16, ¶ 5.) Since 2004, when they met, Plaintiff provided Fletcher with management guidance, business advice, and "strategy since she has [an] MBA in finance," an "MA and Ph.D. in financial economics[,] and spent her entire career in banking worked [sic] in three of the Big Four banks in [the] US." (Doc. 16, ¶ 6.)

Count I of the complaint alleges a "claim" to "set-aside" Fletcher's 2014 sale of his TDHI shares. (Doc. 16, ¶¶ 37-40.) Plaintiff alleges that spousal consent was required for Fletcher to transfer or dispose of this community property, and he disposed of the TDHI shares for "less value" which impaired the "community interest." (Doc. 16, ¶ 37.) Plaintiff claims that Fletcher and Bartman intentionally disregarded Plaintiff's requests for disclosure regarding the merger and hid the merger agreement from Plaintiff.

Count II of the complaint is against Fletcher for breach of his spousal fiduciary duty to Plaintiff. Plaintiff alleges that Fletcher owed her a fiduciary duty with respect to the sale of the TDHI shares and breached this duty by failing to inform Plaintiff of the merger, repetitively failing to provide full disclosure of financial information on TDHI throughout their marriage, and by "seizing" an "excellent merger opportunity for the benefit [of] his personal property rather than for the community estate." (Doc. 16, ¶ 44.) Count II also includes an allegation that all the shareholders of both TDHI and Benchmark knew that Plaintiff did not consent to the merger. (Doc. 16, ¶ 48.)

Plaintiff's prayer for relief seeks to set aside Fletcher's sale of the TDHI stock, seeks a 100-percent award of the value of the transferred shares, compensatory damages, consequential damages, special damages, punitive damages, and legal expenses. (Doc. 16, p. 18.)

**B.     Motions to Dismiss the FAC**

Defendants Bartman and Fletcher filed a motion to dismiss pursuant to Rule 12(b)(1) arguing the Court lacks diversity jurisdiction over the complaint due to the domestic relations exception. Defendants TDHI, Benchmark, Martens, Shannon, and McDougall filed a motion to dismiss under

Rule 12(b)(6) asserting the allegations against them failed to state a claim upon which relief could be granted; alternatively, they request dismissal under Rule 12(e) for a more definite statement, and they ask the Court to strike Plaintiff's prayer for legal fees and punitive damages. While these motions were pending, Plaintiff filed opposition briefs, but she also filed a motion to amend and a proposed Second Amended Complaint ("SAC"). Plaintiff stated in both her opposition briefs that many of the issues in the motions to dismiss were resolved by the new allegations in the proposed SAC.

**C.     Proposed Second Amended Complaint**

The proposed SAC names all of the original defendants, but also adds Alma Fletcher – Defendant Fletcher's mother – and the Fletcher Living Trust as Defendants. (Doc. 50). In her first set of claims against all Defendants, Plaintiff reasserts her claim for a set-aside of the 2014 merger based on fraud. Plaintiff claims she is a non-voting shareholder of TDHI. (Doc. 50, ¶ 55.) Plaintiff maintains Fletcher's TDHI stocks were community property of her marital estate with Fletcher, and that Fletcher disposed of the stocks without adequate consideration, consent, or notice to Plaintiff. (Doc. 50, ¶¶ 56-58.) Plaintiff claims that, due to injury and disability, she was unable to discover the fraudulent merger until 2017. (Doc. 50, ¶¶ 60-61.) She alleges Fletcher and Bartman knowingly disregarded Plaintiff's disclosure requests and hid the entire merger from Plaintiff. Moreover, Bartman, Fletcher, and the Benchmark corporate officers knew Plaintiff had an ownership interest in TDHI through marriage and that the sale of the stocks should not have occurred without Plaintiff's consent. (Doc. 50, ¶¶ 63-64.) Plaintiff maintains that, because her interest in Fletcher's shares were sold for inadequate consideration, this established a debtor-creditor relationship between Fletcher and Plaintiff, and thus between Plaintiff and the TDHI and Benchmark corporate officers. (Doc. 50, ¶¶ 65-67.) Plaintiff alleges that all Defendants knew or should have known that Plaintiff did not give her spousal consent to the 2014 merger. (Doc. 50, ¶ 71.)

Plaintiff's second set of claims ("Count I-B") seeks to set aside a sale of a residence and alleges breach of contract against Fletcher, his mother Alma, and the Fletcher Living Trust. (Doc. 50, ¶¶ 74-

76.) Plaintiff claims vaguely that TDHI had some sort of financial difficulty and loan default in early 2013; as a result Plaintiff came to California in June to help, stayed to look for a house, and Fletcher subsequently returned to Maryland to prepare for his relocation to California. (Doc. 50, ¶ 38.) On June 25, 2013, Plaintiff placed a $2,500 deposit on a plot of land, secured by her "own funds." (Doc. 50, ¶ 38.) Plaintiff executed a purchase contract under her name only for that land. (Doc. 50, ¶ 39.) Plaintiff left the original contract in the apartment she shared with Fletcher when she left California on August 6, 2013. On August 4, 2013, Fletcher completed his move from Maryland to Fresno, and confirmed that he liked the lot and plan for the house and agreed to be added to Plaintiff's contract. (Doc. 50, ¶ 41.) Although Plaintiff instructed the sales agent to add Fletcher to the contract, Plaintiff claims that Fletcher and the sales agent instead added Fletcher to the contract and removed Plaintiff. Plaintiff discovered in April 2014 that her name was not on the contract between Fletcher and the developer. Fletcher and the developer requested that Plaintiff "sign off the deed" as Fletcher's sole and separate property and "let him buy the home himself taking a loan," but Plaintiff refused and again requested she be added back to the second contract. Plaintiff was informed in June 2014 that Fletcher had cancelled the contract. In August 2017, Plaintiff learned Fletcher now lives in the house that she had originally contracted to purchase. In September 2017, Plaintiff discovered that Fletcher, his mother, and the developer jointly conspired and defrauded Plaintiff by cancelling Plaintiff's contract and allowing Fletcher to enter into a new contract jointly with the Fletcher Living Trust. Plaintiff seeks to set aside the sale to Fletcher and the Fletcher Living Trust as it "effectively converted from Plaintiff's community property interest from the real property to Ms. Fletcher's property by name but in reality is [Fletcher's] property since [he] has been living in the house and ha[s] been paying for the expenses." (Doc. 50, ¶ 75.)

In Count II-A, Plaintiff alleges a breach of fiduciary duty against Fletcher, Bartman, and TDHI. (Doc. 50, ¶¶ 77-93.) Plaintiff asserts that as a non-voting shareholder of TDHI, Fletcher, Bartman, and TDHI owed her a fiduciary duty to provide financial information upon her request, but breached this

duty in refusing to provide the documents.

Count II-B alleges that the TDHI shareholders and the Benchmark shareholders owe Plaintiff fiduciary duties as she is a co-shareholder through her community property interest in Fletcher's shares. All Defendants breached this duty by not providing Plaintiff with written notice of the merger, denied Plaintiff financial information pertinent to the merger upon her request, and the Defendants proceeded with the merger knowing that Plaintiff had not consented to it. (Doc. 50, ¶¶ 94-102.)

Count II-C alleges a breach of fiduciary spousal duties against Fletcher in failing to (1) consult Plaintiff about the merger, (2) provide written consent of the merger, and (3) obtain Plaintiff's spousal consent prior to the merger. (Doc. 50, ¶ 104.) Plaintiff alleges Fletcher also failed to provide financial information about TDHI.

Count II-D is a claim for breach of fiduciary duty against Fletcher, Alma Fletcher, and the Fletcher Living Trust. Plaintiff claims Fletcher breached his fiduciary duty as her spouse when he failed to inform her about changing the purchase contract on the house to exclude Plaintiff from the sale and by refusing to add Plaintiff back to the contract when she discovered she had been removed. Fletcher withheld his address from Plaintiff, and "withheld Plaintiff's personal property against her will and refuse[d] to disclose the location from Plaintiff for more than three years." (Doc. 50, ¶ 111.)

Count III-A is a claim against all defendants for fraud, deceit, and concealment of the merger, alleging all Defendants knew Fletcher's interest in TDHI was community property, that he was selling without Plaintiff's notice or consent, and that they all actively hid the financial details of the merger from Plaintiff. (Doc. 50, ¶¶ 114-31.) Count III-B is a claim against Fletcher for fraudulent concealment of the merger, and Count III-C is against Fletcher, Alma Fletcher, and the Fletcher Living Trust for fraud, deceit, and concealment of the real property purchased in California. Plaintiff seeks to set-aside the TDHI merger, an award of 100 percent of the value of the TDHI stocks sold, a "set-aside" of the house purchase which was "deeded under Alma Fletcher as trustee under Fletcher Living Trust," an award of 50 percent of the value of the house purchased by the Fletcher Living Trust, compensatory,

punitive, consequential, and special damages, along with costs and expenses. (Doc. 50, p. 20-21.)

## III. <u>LEGAL STANDARDS</u>

**A.     Federal Rule of Civil Procedure 12(b)(1)**

A defendant may move for dismissal of an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint, on its face, fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

**B.     Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550

U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements'. . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**C.     Federal Rule of Civil Procedure 15**

Under Rule 15(a), except as provided in Rule 15(a)(1), parties may amend pleadings only with written consent from the opposing party or leave of court. Fed. R. Civ. P. 15(a)(2). Leave of court should be "freely give[n] . . . when justice so requires." *Id*.; *see Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (requiring that policy favoring amendment be applied with "extreme liberality"). To determine whether amendment is proper, the court must consider the following factors: undue delay, bad faith, prejudice to the opposing party, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

# IV. <u>ANALYSIS</u>[3]

**A.    The Court Lacks Subject Matter Jurisdiction Over All Claims in the FAC**

Plaintiff's complaint invokes diversity jurisdiction under 29 U.S.C. § 1332 as she is a citizen of Virginia, and Defendants are domiciled in other states.[4]  Defendants Fletcher and Bartman assert the domestic relations exception applies and eliminates diversity jurisdiction.

The Supreme Court has recognized a very narrow domestic relations exception to diversity jurisdiction under 29 U.S.C. § 1332 that "divests the federal courts power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *see also Marshal v. Marshal*, 547 U.S. 293, 307 (2006).  The exception derives from the judicial construction of Congress' intent in enacting the diversity jurisdiction statute, *Ankenbrandt*, 504 U.S. at 700-01, and one of its chief policy considerations is to preclude federal courts from adjudicating in a realm of state law that is "peculiarly delicate" and where inter-court conflicts in policy should be kept to a minimum, *Dunn v. Cometa*, 238 F.3d 38, 41 (1st Cir. 2001).

The exception is not applicable, however, just because a lawsuit generally affects domestic relations; it only comes within the gambit of the exception if the claim at issue is one to obtain, alter or

---

[3]    In support of their motion to dismiss, Defendants TDHI, Benchmark, Shannon McDougall, and Martens ask the Court to judicially notice Plaintiff's original complaint (Doc. 1), the FAC (Doc. 16), and Defendants' memorandum of points and authorities in support of their motion to dismiss (Doc. 12-1). (Doc. 19-2.) Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Courts may take judicial notice of undisputed matters of public record, *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001), including documents on file in federal or state courts. *See Bennett v. Medtronic, Inc*., 285 F.3d 801, 803 n. 2 (9th Cir. 2002). The Court will take judicial notice of the existence of these documents and the dates they were filed.

Defendants Bartman and Fletcher request the Court take judicial notice of Plaintiff's FAC (Doc. 16), and the proof of service of the FAC (Doc. 18). They also ask that the court take judicial notice that on January 10, 2017, Plaintiff filed a petition for spousal support with the Loudoun County Juvenile & Domestic Relations Court in Leesburg, Virginia. (Doc. 20-2.) As to the FAC and Plaintiff's proof of service, those documents are filed in this case docket and are subject to judicial notice. Plaintiff's purported request for spousal support in a Virginia state court, however, is not available on that court's public online docket, and no verification of that court filing has been presented to this Court.  This request for judicial notice is DENIED.

[4] Plaintiff alleges TDHI, Fletcher, and Bartman are California citizens, Benchmark is a Canadian corporation, and Shannon and McDougall are citizens of Canada.  Plaintiff makes no allegation as to Martens' citizenship.

10

end a divorce, alimony or child custody decree. *Ankenbrandt*, 504 U.S. at 703. Nonetheless, property distribution and alimony arrangements necessarily accompany a divorce and are generally inextricably intertwined with a divorce decree. Many circuits have recognized that the domestic relations exception covers attempts to determine or modify not only alimony awards, but also the division of marital property pursuant to a divorce. *Irish v. Irish*, 842 F.3d 736, 741 (1st Cir. 2016); *McCavey v. Barnett*, 629 Fed. Appx. 865, 867 (11th Cir. 2015) (per curiam) (unpublished opinion); *Wallace v. Wallace*, 736 F.3d 764, 766 (8th Cir. 2013); *McLaughlin v. Cotner*, 193 F.3d 410, 413 (6th Cir. 1999), cert. denied, 529 U.S. 1008 (2000).

In *Irish*, husband (Craig) and wife (Dawn) filed a separation agreement in their divorce proceeding, which was incorporated into the divorce judgment. 842 F.3d at 738. Two years after the divorce judgment, on sale of Craig's company, Dawn discovered Craig had concealed a pre-divorce deal which granted him "phantom equity" in the company beyond the interest he had reported to the divorce court. *Id.* Dawn filed suit in federal court alleging contract, tort, and fraud claims against Craig. On appeal, the circuit court found there was no subject matter jurisdiction over Dawn's claims because by effectively classifying the assets (Craig's additional corporate interest that he concealed and the resulting cash upon sale) as marital and allocating them in the first instance, the district court had effectively altered the underlying divorce decree, which incorporated the parties' property settlement. *Id*. at 741. The court concluded "federal courts have no business 'allocating property that [should be] in the custody of a state court, or interfering with' a distribution already made by a state court." *Id*. at 742 (citing 13E Wright & Miller, supra, § 3609.1 (3d ed.)). The court concluded that the domestic relations exception governed the claims, even though they may have been "cloaked in the trappings" of tort, contract, and fraud claims. *Id.*

11

The same reasoning applies to Plaintiff's claims here. The divorce decree entered by the Fresno Superior Court was bifurcated,[5] meaning it adjudicated Plaintiff and Fletcher's marital status only. Under California law, family law courts have "continuing jurisdiction" to award community assets or liabilities to the parties that have not been previously adjudicated by a judgment in the underlying dissolution proceeding, even where jurisdiction has not been expressly reserved. Cal. Fam. Code § 2556. Since no adjudication of the marital estate assets or liabilities occurred in the underlying dissolution proceeding (based on Plaintiff's objection to the court's personal jurisdiction over her), the Fresno County Superior Court has continuing jurisdiction over distribution of alleged community estate assets – namely, the assets Plaintiff seeks to be awarded in this case. The relief Plaintiff seeks includes a division of alleged marital assets. Determinations by this Court pertaining to a division of the marital estate, similar to *Irish*, *supra*, would be tantamount to altering or amending the parties' divorce decree to include a marital estate asset distribution, assets over which the state court has continuing jurisdiction.[6] For this reason, the domestic relations exception applies to Plaintiff's claims against Fletcher.

Further, as it pertains to the claims against Fletcher's business partner, Bartman, TDHI, Benchmark, and Benchmark's corporate officers, they are all predicated on Plaintiff's assertion she has a community property interest in TDHI and, pursuant to TDHI's 2014 sale/merger, an interest in Benchmark. Although in her proposed SAC[7] Plaintiff claims she was a "non-voting" shareholder in TDHI such that Bartman and Benchmark's officers owed her a fiduciary duty, her "non-voting shareholder" theory arises entirely from her alleged community property interest in TDHI as Fletcher's

---

[5] *See https://publicportal.fresno.courts.ca.gov/FRESNOPORTAL/Home/WorkspaceMode?p=0* (last accessed December 12, 2017). Case No. 14CEFL06453, Docket Entry February 2, 2017.

[6] The state court's personal jurisdiction over Plaintiff is a separate jurisdictional consideration.

[7] In her opposition to Defendants' motions to dismiss, Plaintiff noted that her proposed SAC cured any defects in her FAC. (Docs. 51, 52). The Court has considered the proposed SAC in conjunction with Plaintiff's opposition briefs.

12

wife. Even assuming this theory has any viability, it would require consideration of Plaintiff and Fletcher's marital status to characterize Plaintiff's asserted interest in TDHI, and the claim would require examination and application of California family law over assets still within the continuing jurisdiction of the state court. *See Wasserman v. Wasserman*, 671 F.2d 832, 834-35 (4th Cir. 1982) (claims that do not require the court to adjust family status, determine duties under family-relations law, or determine whether family-law duties have been breached do not come within the domestic relations exception). These claims fall within the domestic relations exception, even though they are claims against third-parties to Fletcher and Plaintiff's marriage.

Even assuming the Court had subject matter jurisdiction over the claims against Defendants other than Fletcher, the claims are not cognizable. Having reviewed the SAC and construing it as part of Plaintiff's opposition, Plaintiff's additional argument and allegations do not established how TDHI, Benchmark, or their corporate officers owed Plaintiff any fiduciary duty. Under California law, to establish a breach of fiduciary duty, a plaintiff must show "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *People ex. rel. Harris v. Rizzo*, 214 Cal. App. 4th 921, 950 (2013). Like the initial complaint and the FAC, the proposed SAC alleges Fletcher obtained his interest in the TDHI *before* his marriage to Plaintiff, but there are no facts showing how a community property interest arose in assets Fletcher had obtained prior to marriage,[8] or how any interest in Fletcher's property could result in a shareholder or creditor-debtor relationship between Plaintiff and TDHI, Bartman, Benchmark, or its corporate officers. Plaintiff's conclusory allegations that she is a non-voting shareholder of TDHI or that she is a creditor of either corporation because Fletcher sold her interest in the shares for inadequate consideration are entirely insufficient. *Iqbal*, 556 U.S. at 678 (complaint insufficient if "it tenders naked assertions devoid of further factual development"). If Fletcher breached his spousal fiduciary duty under California Family Code § 721

---

[8] Plaintiff alleges she provided Fletcher with financial and business advice, but provides no specific allegations how her particular skill or labor increased the value of the TDHI ownership interest. (*See* Doc. 16, ¶ 6.)

13

through his sale of marital assets – the essence of all Plaintiff's claims – Plaintiff's remedy lies with Fletcher, not others who are only tangentially related to Fletcher's sale of alleged community property. The allegations Plaintiff makes against the other Defendants include only that (1) they knew she was married to Fletcher at the time of the sale, (2) they knew Fletcher did not have Plaintiff's permission to sell TDHI shares, and (3) these Defendants failed to provide Plaintiff with financial information about TDHI or the merger. These allegations are wholly insufficient to state any type of fiduciary relationship or establish a breach of fiduciary duties.

Moreover, the proposed SAC adds claims against these Defendants for fraud and concealment based on the same limited allegations, but fraud claims require even greater specificity and allegations as to each Defendant's conduct. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir. 2003) (fraud claims must be stated with specificity under Federal Rule of Civil Procedure 9(b)). Plaintiff has had multiple opportunities to present allegations amounting to a cognizable claim against TDHI, Bartman, Benchmark, and Benchmark's corporate officers, but she has been unable to marshal the necessary facts. Plaintiff's proposed amendment does not cure the defects. Even to the extent diversity jurisdiction existed, the claims against Bartman, TDHI, Benchmark, Shannon, Martens, and McDougall are not cognizable and are subject to dismissal.

Bartman and Fletcher's motion to dismiss pursuant to 12(b)(1) for lack of subject matter jurisdiction is GRANTED. Defendants TDHI, Benchmark, Shannon, Martens, and McDougall's motion to dismiss under 12(b)(6), alternatively, under Rule 12(e) is DENIED as MOOT.

**B.     Plaintiff's Motion to Amend is DENIED as MOOT**

Finally, as noted above, the Court has reviewed Plaintiff's request to amend the complaint for a second time. Nothing in the proposed SAC cures the defects with regard to subject matter jurisdiction. In fact, the proposed SAC's addition of Fletcher's mother, Alma Fletcher, and the Fletcher Living Trust as defendants related to their purchase of a residence, underscores that this action is one to divide what Plaintiff claims are community assets with Fletcher as part of their marital estate. Claims pertaining to

14

the division of the marital estate not previously adjudicated are in the continuing jurisdiction of the state court. Additionally, the allegations regarding the land/house purchase are entirely separate from the 2014 TDHI merger transaction – the land/house allegations arise out of a wholly separate transaction and nucleus of facts and, other than Fletcher, involve a different group of new defendants. These proposed claims against Alma Fletcher and the Fletcher Living Trust cannot be joined to this action under Federal Rule of Civil Procedure 20(a), which requires that the claims against each defendant arise out of the same transaction or occurrence. Plaintiff's motion to amend the complaint as proposed in the SAC is denied as moot for lack of subject matter jurisdiction. Even assuming there were jurisdiction over claims against Defendants other than Fletcher, amendment of the complaint as proposed would be futile as Plaintiff is unable to marshal any facts to state a cognizable claim against the existing Defendants, and the proposed new defendants cannot be joined under Fed. R. Civ. P. 20(a).

## V. **CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Bartman and Fletcher's motion to dismiss under 12(b)(1) is GRANTED; and
2. Defendant TDHI, Benchmark, Shannon, McDougall, and Martens' motion to dismiss under 12(b)(6) is DENIED as MOOT;
3. Plaintiff's motion to amend the complaint is DENIED as MOOT; and
4. This action is dismissed for lack of subject matter jurisdiction under the domestic relations exception.

IT IS SO ORDERED.

Dated: **December 13, 2017**     /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE